# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 736 | **DATE** | 8/24/2004 |
| **CASE TITLE** | Loera vs. Natl RR | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)■ [Other docket entry] For the reasons stated in the attached memorandum opinion, the defendant's motion for summary judgment on Count III [99-1] and partial motion for summary judgment on Counts I and II [99-2] are denied in there entirety. The parties are directed to exchange proposed witness lists by 09/07/04. Motions in limine are to be filed by 09/21/04. Responses to the motions in limine are to be filed by 10/06/04 and replies by 10/13/04. The parties are to submit to this Court's chambers by 10/27/04, the joint pretrial order as outlined in this Court's standing order regarding pretrial orders. Copies of the Court standing pretrial order maybe obtained from this Court's web page or by this Court's Courtroom Deputy. Pretrial conference set for 11/09/04 at 10:30 a.m. Jury trial set to begin on 11/15/04 at 9:30 a.m. If the parties believe a settlement conference before this Court would be useful, the parties are to contact this Court's Courtroom Deputy. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 25 2004 | |
| ✓ | Docketing to mail notices. Memorandum Opinion distributed in open Court. | date docketed | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | /// |
| MW6 | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA LOERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 736 |
| | ) | |
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION (AMTRAK), | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**

**MEMORANDUM OPINION**     AUG 2 5 2004

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant National Railroad Passenger

Corporation's ("Amtrak") motion for summary judgment on Count III and partial

summary judgment on Counts I and II. For the reasons stated below, we deny the

motion for summary judgment in its entirety.

**BACKGROUND**

Plaintiff Maria Loera ("Loera") began working for Amtrak in October of

1988. In 1996 Loera became a train conductor for Amtrak. In November 1998,

Loera was transferred to a yard conductor position in the Chicago train yards

("yards"). Loera typically worked in the yards with a three man crew consisting of

1

|||

an engineer, conductor, and an assistant conductor. One of Loera's supervisors in the yards was Trainmaster Tom Graziosi. On November 3, 2002, Loera was assigned to work with a crew consisting of conductor Bobby Morrow ("Morrow") and engineer Bill Dorman. On that day, Morrow contacted the Yardmaster to report Loera was tardy to work. Loera claims that she was not tardy for work because employees generally do not have a set start time. When Loera reported for work, Graziosi called Loera to his office to discuss her tardiness. Loera and Mike McKenna, a former union representative, went to Graziosi's office where he discussed Loera's tardiness and then sent her back to work.

Loera returned to work and told Morrow that she did not appreciate the fact that he had "turned her in" to management for being tardy. Shortly after that discussion, Loera contacted the Yardmaster to tell him that she had an asthma attack and was going home sick. The Yardmaster in turn informed Graziosi of such information. Loera then returned to the crew room to prepare to leave. Graziosi, also in the room posting orders, asked Loera if she was going home sick. Loera, without responding to Graziosi's inquiry, left the crew room to go upstairs to the women's locker room.

According to Loera, Graziosi subsequently followed her into the stairwell and yelled at her. Loera allegedly told Graziosi to leave her alone, and that she was going home. Graziosi then purportedly chased Loera up the stairwell while yelling, and grabbed at her from a lower stair. Loera contends that he pulled her downwards

2

by her right wrist and shoulder which twisted her. Graziosi allegedly continued to yell at her saying that she better not tell anyone about this because she was going to get fired with all her complaining and no one would believe her. Loera purportedly began crying and ran into the bathroom with Graziosi chasing her.

While in the bathroom, Loera alleged that she could hear Graziosi outside discussing potential rule violations that he could charge her with. Loera further contends that she called Doug Silkowski, her union representative, and her fiancé, Miguel Reyes, from the bathroom. Magdelana Marowelli ("Marowelli") was also in the bathroom when Loera entered, and confirmed that Graziosi was standing outside the door. Loera contends that she was crying the entire time in the bathroom, and that Graziosi never asked if she needed medical assistance, nor did he ask Marowelli if Loera was okay. Loera claims that she was trapped in the bathroom by Graziosi. Reyes subsequently picked Loera up from work. Loera claims that the alleged pull on her right arm by Graziosi injured Loera's left shoulder and that she subsequently required surgery to repair the resulting tear in the rotator cuff on her left shoulder.

Loera also alleges that throughout her employment at the yards she endured discriminatory gender harassment and sexually harassing conduct from her male co-workers. Loera alleges that the harassment was so severe that it impaired her ability to effectively perform her work duties and created a hostile and abusive work environment. She contends that she repeatedly complained to management regarding the harassment, which only allegedly increased for reasons of retaliation.

Loera further alleged that supervisory personnel only encouraged such behavior and subjected her to increased scrutiny and stricter working conditions than other similarly situated employees.

On November 4, 2002, Loera contacted Yardmaster Cornell Wallace ("Wallace") to inform him what allegedly occurred with Graziosi the previous day and that she would not be coming to work. Loera also told Wallace that her left shoulder was injured. Wallace then instructed her to come to work and give a statement about the attack. However, Loera refused to do so since she was allegedly taking medicine that made her drowsy. On November 6, 2002, Loera submitted a statement about the incident to Steve McClarty ("McClarty"), Graziosi's supervisor.

Loera filed the instant suit on January 29, 2002. Her second amended complaint alleges a hostile work environment claim pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), a Title VII retaliation claim (Count II), and a claim pursuant to the Federal Employee's Liability Act ("FELA"), 45 U.S.C. § 51 (Count III).

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);*Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I.  FELA Claim (Count III)

Amtrak argues that it is entitled to summary judgment on the FELA claim.

FELA provides a broad remedial framework for railroad workers who suffer injuries

while in the scope of their employment. *Walker v. N.E. Reg'l Commuter R.R. Corp.,*

225 F.3d 895, 897 (7th Cir. 2000).  Under FELA, "every common carrier by railroad

. . . shall be liable in damages to any person suffering injury while he is employed . .

. for such injury or death resulting in whole or in part from the negligence of any of

the officers, agents, or employees of such carrier." 45 U.S.C. § 51.  To establish

liability in a FELA case, the plaintiff's "burden is significantly lighter than in an

ordinary negligence case." *DeBiasio v. Ill. Cent. R.R.,* 52 F.3d 678, 685 (7th Cir.

1995).


#### A. Causation

The plaintiff need only demonstrate that the employer's negligence played

even the "slightest role" in causing the employee's injury. *Darrough v. CSX*

*Transp., Inc.,* 321 F.3d 674, 675 (7th Cir. 2003).  Thus, the determinative question is

whether the railroad utilized reasonable care in maintaining a reasonably safe work

environment. *Id.* at 676.  Although the plaintiff bringing a FELA claim has a lesser

burden for establishing negligence, a plaintiff must still "prove the traditional

common law elements of negligence, including foreseeability, duty, breach, and

6

causation." *Fulk v. Illinois Cent. R. Co.*, 22 F.3d 120, 124 (7ᵗʰ Cir. 1994). *See also Walden v. Illinois Cent. Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992)(stating that "FELA is not a workmen's compensation act; causation must still be proved").

Amtrak retained Dr. William Dobozi ("Dobozi") as a medical expert in this case. Dobozi concluded that Loera's rotator cuff injury on her left shoulder could not have been caused by the alleged pull by Grasziosi on her right arm. Dobozi concluded that the injury resulted from a chronic condition that pre-dated the alleged arm pulling incident. Loera has not provided any expert opinion to rebut Dobozi's medical opinions.

Amtrak acknowledges the lesser burden for a plaintiff to prove negligence for a FELA claim. However, Amtrak argues that the lesser burden is only applicable to "proving that an employer's conduct was negligent" and that the burden is not applicable to determining whether a plaintiff has proven causation. (Reply 1). Such an argument is nonsensical. FELA claims generally follow the common law actions and as such adopts the elements for negligence claims. *Fulk*, 22 F.3d at 124. Defendant fails to recall that causation is actually one element for proving a negligence claim. Amtrak has cited no authority that would limit the lesser burden to one element of a negligence claim.

Amtrak also argues that expert testimony is required to establish the connection between an injury and its cause, "unless the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an

automobile." *Schmaltz v. Norfolk & W. Ry. Co.,* 896 F.Supp. 180, 182 (N.D. Ill. 1995). Amtrak is correct that such evidence is relevant to establishing the causation of Loera's injuries resulting in the impaired use of her arm. The viability of this causal connection could establish evidence of the extent of the injuries Loera suffered, and the extent of Amtrak's liability. However, although Dr. Dobozi's, expert testimony is valid regarding the issue of whether Graziosi's actions caused Loera to tear her rotator cuff, his testimony is not dispositive. Loera correctly points out that for a FELA claim a trier of fact can infer causation from a temporal sequence. *Cella v. U.S.,* 998 F.2d 418, 428-29 (7th Cir. 1993)(indicating that causation can be inferred from "the temporal relationship between the accident and the onset of the [injury.]").

Amtrak argues that the instant case involves more complex medical matters than the example given above of a broken leg and that a trier of fact unskilled in medicine cannot reasonably make such an inference in the face of contrary medical evidence. We disagree. The instant case is more analogous to a broken leg. Loera alleges that her right arm was pulled which turned her suddenly. If her right shoulder was jerked suddenly then it necessarily follows that her left shoulder turned as well. Thus, there was an alleged physical exertion on the injured area of Loera's person. Amtrak has merely stated in an abstract manner that Dobozi concluded that the pull of Loera's right arm could not have caused the left shoulder injury. However, Amtrak has not provided any testimony by Dobozi that would indicate

8

that it is medically impossible for the shoulder injury to be caused by the pull of

Loera's right arm. Particularly in light of the lesser burden for a plaintiff bringing a

FELA negligence claim and the fact that an employer can be liable under FELA if

the employer's "negligence played any part, even the slightest, in producing the

injury or death for which damages are sought," *Cella*, 998 F.2d at 429, we conclude

that we cannot find for Amtrak as a matter of law on the issue of causation.

Another reason why Dobozi's testimony is not determinative on the causation

issue is that it is mainly relevant to damages rather than to causation. Dobozi's

testimony does not address the operative question this court is faced with on a

summary judgment motion which is whether a battery occurred. Loera correctly

points out that she can recover not only for physical injuries, but also for emotional

distress. Loera also correctly points out that she is not required to show that

Graziosi caused her rotator cuff injury in order to prove the elements for her battery

claim because, although the intentional tort of battery requires physical contacts, it

does not require physical injury. *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.,* 972 F.2d

805, 811 (7th Cir. 1992). Unauthorized touching that is offensive will suffice for a

battery claim, and the fact that the victim was not "bruised or wounded" is only

relevant to the issues of damages. *Id.* Amtrak is correct that Dr. Dobozi's

testimony, especially with the lack of an opposing expert witness, is strong evidence

pertaining to whether Graziosi truly caused the alleged injury. However, his

deposition does not, and cannot, provide evidence that the battery itself, the physical

9

contact in the stairwell between Graziosi and Loera, did not occur. Furthermore, since Loera testified that she and Graziosi were in the stairwell alone when the incident occurred, there is no other eyewitness testimony available. However, a jury is able to draw a common sense inference of fault in light of the presented facts. *Harbin,* 921 F.2d at 132. Moreover, it is possible that a jury could draw an inference of battery from the case at hand. Therefore, whether or not Graziosi did actually grab Loera in the stairwell remains a genuine issue of material fact.

According to Graziosi, he was standing outside of the women's bathroom to attempt to see if Loera was in there, and if so, if she needed any medical attention. (Graziosi Dep. 131, 135). However, he stated in his deposition that he had never before, in his over two and a half years as a supervisor at Amtrak, asked anyone if they needed to go to the hospital when they were going home sick. (Graziosi Dep. 133-134, 178). Furthermore, when Marowelli left the bathroom, Graziosi never asked her if anyone else was in there or if the person inside was alright. (Marowelli Dep. 13). Marowelli also testified that Loera was crying while she was in the bathroom. (Marowelli Dep. 24). Thus, if the incident never occurred, and if Graziosi was standing outside the bathroom to see if Loera needed medical attention, the question remains of why he would not request information from another woman leaving the restroom, namely Marowelli. Although at this time we are not making an opinion on the validity or evidential clarity of these facts, we are concluding that this sequence of events could potentially motivate a jury to infer a battery occurred.

Therefore, although Dr. Dobozi's valid expert testimony does include evidence that will be admissible at trial, the issue he will assist in resolving relates to a question of damages and Amtrak's extent of liability for those damages. However, the operative question at hand is whether there is a genuine issue of material fact that a battery occurred here. Furthermore, although a claim may be based on self-serving testimony, if a conflict of facts is set up, it is necessary for a jury to sort out the truth. *Wilson v. Chi., Milwaukee, St. Paul, and Pac. R.R. Co.,* 841 F.2d 1347, 1355 (7th Cir. 1988). Accordingly, Loera's testimony asserts facts which create a triable conflict.

The cases Amtrak cited, none of which are binding on this court, as supporting its contention that expert evidence is required to prove the injury occurred all related to chemical or radiation exposure and medical aftermaths.*Claar v. Burlington N. R.R. Co.,* 29 F.3d 499, 503 (9th Cir. 1994); *Simpson v. N.E. Ill. Reg'l Commuter R.R. Corp.,* 957 F. Supp. 136, 138 (N.D. Ill. 1997);*O'Conner v. Commonwealth Edison Co.,* 807 F. Supp. 1376, 1402-1403 (C.D. Ill. 1992). Such cases are clearly distinguishable from the present issue because exposure to toxic fumes or chemicals or radiation are not dispositive of whether an injury actually occurred. Rather, in such cases, the plaintiff must prove that the exposure actually caused its injury, and that the employer is responsible for any injuries resulting from such. However, for a battery claim, the operative question is whether the unwarranted and offensive physical contact occurred. Causation is required to prove

11

damages, and the extent of liability of the defendant determinative on whether the extent of injuries suffered were the result of the incident in question. Whether the actual offensive physical contact occurred is a question for the trier of fact.

### B. Amtrak's Liability

Although we have found that the pleaded facts are sufficient to survive a summary judgment motion regarding whether the tort occurred, there remains the question of whether Amtrak would be liable for Graziosi's alleged actions if proven. A FELA plaintiff may establish an employer's liability by one of two methods. *Lancaster*, 773 F.2d at 818. First, a plaintiff can allege direct negligence, that the employer was negligent in hiring, supervising, or failing to fire the employee that purportedly committed the tort. *Id.* Second, a plaintiff can establish respondeat superior by proving that the intentional tort was committed in furtherance of the employer's objectives. *Id.*

Under the direct negligence method, a plaintiff must establish that the employer breached its duty because a reasonable person could foresee that the alleged circumstances created a potential for harm. *Kossman v. N.E. Ill. Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1036 (7th Cir. 2000). Specifically, the employer is liable under direct negligence only if the employer was negligent in its inaction regarding the intentional wrongdoer. *Lancaster*, 773 F.2d at 818. Loera attempted to prove that Amtrak was negligent because the alleged incident with

12

Graziosi was foreseeable.

Loera first argued that Amtrak should have been able to foresee that Graziosi was dangerous because of his background as a convicted felon. She states that because of this, Amtrak could have reasonably anticipated the alleged incident. However, Amtrak is correct that Loera has not provided any evidence that it even uncovered such information on its background check of Graziosi. Furthermore, the conviction took place 23 years ago and was for burglary and grand larceny. Such crimes do not establish that Graziosi would have any tendency toward violence while working at Amtrak because they were not violent crimes, and so are irrelevant to the current claim.

Loera continued to argue that the conditions in the yard are unsafe, and that her prior complaints regarding the inappropriate behavior of co-workers should have led Amtrak to anticipate this incident could occur. Both of these methods to establish direct negligence fail, since they do not have any bearing on whether Graziosi himself was a danger to others at Amtrak. Loera makes references to a variety of dangerous occurrences at the yards, none of which are in any way relevant to the instant action. Loera cited *Vanderveer v. Norfolk and Western Railroad Co.* to establish that FELA claims have been successful where work environments have been unsafe prior to the incident. 222 N.E.2d 897, 902 (Ill. App. Ct.1966). However, in *Vanderveer*, a case not binding on this court, the individuals that attacked the plaintiff were not employees of the railroad. *Id.* at 899. Thus, the

determinative issue was not whether the railroad was negligent regarding a certain employee, but rather whether the railroad took the precautionary measures necessary to ensure the safety of its employees while at work. *Id.* at 902. This issue is wholly different from the case at hand, since Amtrak could only be held liable under a direct negligence theory if Graziosi himself was a foreseeable threat to other employees. Therefore, even Loera's past complaints of discriminatory and inappropriate behavior by other co-workers in the yard do not establish that Graziosi himself was a threat to anyone, as she said herself that she did not anticipate any such assault or battery from Graziosi. (Loera Dep. 268). Furthermore, there is no evidence that any other incidents occurred that would cause Amtrak to foresee Graziosi might have a proclivity to violence. Although there was an incident with George Sabich ("Sabich"), another Amtrak employee, who claimed Graziosi harassed him by yelling at him and pointing his finger in his face, even Sabich did not allege that Graziosi threatened him with physical harm. Thus, Loera cannot establish Amtrak's liability through a direct negligence theory. However, Loera does plead sufficient facts to survive summary judgment that Amtrak could be held liable on a respondeat superior theory.

Under a respondeat superior theory, the plaintiff must plead that the tort occurred in attempted furtherance of the employer's business. *Lancaster,* 773 F.2d at 818. A FELA plaintiff can prove that the tort occurred in the scope of the employer's business if it would not have occurred absent the employment

relationship between the two individuals. *Wilson,* 841 F.2d at 1356 n.2. Furthermore, conduct is in furtherance of an employer's business goals if a supervisor performs his duties with an "excess of zeal" and the tort is the result of that behavior. *Lancaster,* 773 F.2d at 819 (stating that an employer is liable for supervisors' actions in the scope of their employment where supervisors assaulted employee out of exasperation with employee's job performance).

Loera alleges that Graziosi assaulted and battered her in the stairwell when yelling at her for complaining about work conditions to supervisors and yelling to look up a work rule so that he could "get her." Amtrak contends that Loera has no evidence that Graziosi was acting in furtherance of Amtrak's objectives. We disagree. Although we are not determining whether this claim will be successful at trial, we are stating that Loera has alleged sufficient facts that Graziosi's conduct was in the scope of his employment. Loera alleged that Graziosi was yelling at her about her complaining at work. Furthermore, he allegedly was yelling at her for all her complaining at Amtrak, inferring that he was upset with her conduct at work, which could establish that he was acting in furtherance of Amtrak's objectives.

Amtrak also argues that since the record does not provide evidence that Graziosi assaulted and battered Loera in an attempt to discipline her, this theory of liability should not be allowed. However, as stated above, the jury is allowed to engage in common sense inference regarding causation and fault in FELA cases. *Harbin,* 921 F.2d at 132. In addition, for a summary judgment motion we are

15

required to draw all inferences in the favor of Loera, the non-movant. Therefore, although Loera might not have presented direct evidence that Graziosi was attempting to discipline her at the time of the alleged incident in the stairwell, such an inference could be drawn. Hence, Loera has alleged facts of Amtrak's liability under a respondeat superior theory sufficient to survive a summary judgment motion.

### C. Assault Claim

Amtrak argues that Loera's assault claim should be dismissed because she did not include such a claim in her amended complaint. A plaintiff can bring a cause of action under FELA alleging the threat of physical contact, thus an assault. *Ray v. Consol. Rail Corp.,* 938 F.2d 704, 705 (7th Cir. 1991). Furthermore, all that the Federal Rules of Civil Procedure Rule 9 requires is that a complaint state the plaintiff's legal claim with some indication of time and place. *Thomson v. Washington,* 362 F.3d 969, 970-71 (7th Cir. 2004). Therefore, simply stated, the legal claim must provide adequate notice of the legal basis at issue. *Id.* at 971. Loera states specifically in her amended complaint that she was "assaulted and battered." (A Compl. Par. 16). During discovery there has also been evidence produced that indicates that Loera was frightened of Graziosi and Loera claims that even after the alleged pull on her arm, she felt trapped in the bathroom by Graziosi and feared harm from him. Also, we are required to draw all inferences in Loera's favor for the purposes of this motion. *Anderson,* 477 U.S. at 255; *Bay,* 212 F.3d at 972.

16

Therefore, contrary to Amtrak's contentions, Loera sufficiently pled an assault claim because she stated that she was pleading an assault charge in her complaint, and the court can draw inferences that it is possible to prove that such an assault actually occurred.

## II. Title VII Claim

Amtrak's final argument for partial summary judgment contends that Loera has not sufficiently established the battery charge relating to the incident with Graziosi in the stairwell for her Title VII claims, Counts I and II. Amtrak cited *Schobert v. Illinois Dept. of Transp.*, 304 F.3d 725 (7th Cir. 2002) in which the court stated that "[e]very tort, whether it be one derived from common law or a statutory tort like Title VII, requires a showing of harm." *Id.* at 731. Amtrak argues for the same reasons stated above that Loera has not provided sufficient evidence of causation and that Loera cannot prove any damages. We disagree for the same reasons stated above.

Although the above quote from *Schobert* is accurate, Amtrak mistakes both the context it was given in and that the Court held that physical harm is required to prove injury under Title VII. Rather, it stated that "even in cases with no monetary consequences to the plaintiff, it is still necessary to prove at least a dignitary harm." *Id.* Thus, this precedent does not infer that since Loera has not established the extent of her injuries she cannot go forth on her claims. However, as discussed above,

Loera has sufficiently pled both an assault and battery. The question now turns to whether these allegations are sufficient to contribute to Loera's Title VII claims.

In her complaint, Loera alleges that the assault and battery she suffered from Graziosi were part of an attempt to "get her." Amtrak contends that since she has offered no evidence that Graziosi was part of such a plot, Loera's claims for hostile work environment under Title VII fail. We disagree. The additional facts that Loera has pled, which are not the basis for this summary judgment motion, are necessary to infer that the incident with Graziosi was not isolated, but rather if proven only contributed to maintain a hostile work environment for Loera created by various co-workers. Although by itself her claims of battery and assault by Graziosi might not be sufficient to establish such hostility, the other multiple incidents surrounding this claim accumulate to survive summary judgment. Therefore, we deny Amtrak's motion for summary judgment on the Title VII claim.

## CONCLUSION

Based on the foregoing analysis, we deny Defendant Amtrak's motion for summary judgment in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 24, 2004